IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALLEN AND LULAR JONES,<br><br>  Plaintiffs,<br><br>vs.<br><br>PLANET HOME LENDING, LLC,<br><br>  Defendant. | Case No.: |

## COMPLAINT

**NOW COME** the Plaintiffs, Allen and Lular Jones, and as their Complaint against the above-described Defendant, state as follows:

### PRELIMINARY STATEMENT

This action arises from the servicing of Plaintiffs' mortgage loan by Planet Home Lending, LLC ("PHL"). Specifically, PHL failed to recognize and properly apply payments, wrongfully held Plaintiffs in default of their mortgage loan, reported false information to credit bureaus and wrongfully attempted to collect debt that is not owed. PHL has violated the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), which requires it to investigate and correct servicing errors after receiving written notice of same. Plaintiffs provided such notice and PHL failed to properly investigate and failed to make appropriate corrections to the account. PHL also failed to provide information requested by Plaintiffs and information required under RESPA. Plaintiffs also assert claims for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. 1692 ("FDCPA"), for wrongful actions taken in connection with the attempted collection of debt.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1332 and 1333, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

## PARTIES

2.      Plaintiffs are adult residents of Mobile County, Alabama. At all relevant times, Plaintiffs lived at 2323 Massengale Drive, Mobile, Alabama 36605.

3.      Defendant Planet Home Lending, LLC is a Delaware limited liability company with its principal place of business in Connecticut. The Defendant is referred to herein as "PHL."

4.      PHL is a mortgage loan servicer. It is engaged in a business, the principal purpose of which is the collection of debt secured by mortgage loans which are owed to a separate entity. PHL uses an instrumentality of interstate commerce or the mails in connection with said business. PHL acquired the servicing of the Plaintiffs' loan after it was considered by the lender to be in default. PHL is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTS

5.      On or about July 1, 2008, Plaintiffs entered into a residential mortgage loan with AmeriGroup Mortgage Corp. The loan is secured by Plaintiffs' home located at 2323 Massengale Drive in Mobile, Alabama (the "Property"). This has been the Plaintiffs' home for about 12 years. The original loan amount was $73,500.00. Monthly principal and interest payments are $300.46.

6.      PHL became the servicer of the loan on or around February 2016. At the time, the servicing of loan was transferred to PHL, the loan was considered by the lender to be in default.

7.      Shortly after it acquired the servicing of the loan, PHL began sending the Joneses notices of default and other letters demanding alleged past-due amount and fees which were not owed. The Joneses called PHL and explained that they did not believe they were behind. PHL

representatives could not provide any consistent or sensical explanation of the amount or basis of this arrearage. During phone conversations with PHL representatives, the Joneses were told that the payment was not received for August 2016. When proof of that payment was provided, PHL representatives continued to insist that the Joneses were behind. Eventually, the Joneses were told that PHL would no longer accept payments.

8. On December 2, 2016, PHL sent Plaintiffs a "formal Notice of Default" claiming a past due amount of $1,819.63 and demanding an "additional payment" of $448.24, plus late fees. The letter also stated that if the past due amount and "additional payment" was not received in certified funds within 30 days, the loan would be accelerated and PHL "will proceed to foreclose and sell the property." At that point, it was true that the Joneses had not provided the October-November payments, but that was only because PHL told them the payments would not be accepted. On December 13th, shortly after they received the "Notice of Default," the Joneses mailed a check for payment for those two months.

9. To compound the problem, PHL failed to provide sending regular monthly statements, leaving the Joneses in the dark as to basic information regarding their loan, including which payments PHL claimed were missing and how the "additional payment" and fees were calculated.

10. Before or around the same time, PHL began reporting false and derogatory information to consumer reporting agencies, including Equifax indicating that the Joneses had failed to make certain monthly payments. PHL failed to indicate that this alleged delinquency was disputed by the Joneses.

11. On or about December 19, 2016, Plaintiffs sent a letter explaining that they are not in default and requesting that PHL investigate the matter, make corrections and properly apply

3

their payments. The letter properly identified the loan and borrowers, and it adequately described the servicing errors the Plaintiffs believed occurred. Here is the text of the letter:

> We are writing because we believe you are not properly applying or recognizing our payments and you are wrongfully holding us in default and threatening to foreclose on our home.
>
> We believe the problem started when you failed to recognize or apply our August 2016 payment. We have been current until that time. You told us (falsely) that you did not receive a payment for August, even though we sent you a money order in the full amount of our payment well before the grace period. We then sent you a copy of the negotiated money order, proving that you received the funds. (That document is attached hereto). We sent in the September payment on time. We believe you incorrectly applied the payment to July 2016, even though we paid July, as well as August. (A copy of the negotiated money order for July is also attached). You then told us that you could no longer accept payments and we were instructed by your representatives not to send in payments October and November.
>
> We recently received notice of your intent to foreclose and accelerate the loan if we do not pay $1,819.63. (That letter is attached). We acknowledge we are behind two months (October and November) but that's only because you told us you would not accept payments. We have mailed to your payment office those two payments. (A copy of our check which we mailed on December 13, 2016 is attached). But we owe nothing further.
>
> Also, it is very important for us to know exactly what you are claiming we owe, particularly now that you have shown an ability to lose or misapply out payments. However, we are not receiving monthly statements from you. We demand that you immediately start sending us statements. If you refuse to do so, please state your reasons. It is our understanding that you are required by law to send monthly statements.
>
> We are asking that you fully investigate these matters and make all appropriate corrections to our account. Those corrections should include, at a minimum, (1) applying our payments, (2) declaring our account current, (3) return any overpayments we have made and (4) immediately start sending us monthly statements. We also demand that you immediately stop any credit reporting that states or implies that we behind.
>
> In addition, please provide us with the following information:
>
> 1. A statement of exactly which payments, if any, you contend we failed to make.
>
> 2. A full payment history covering the entire history of the loan (not just the time you serviced it), showing the payments received and how they were applied.
>
> 3. A full and complete payoff statement which details every item you claim is owed by us and required to fully release the loan;
>
> 4. Identify the owner of our loan.

12. Attached to the letter was a copy of the December 2nd Notice of Default and proof of payments.

13. Plaintiffs' December 19th letter constitutes a Qualified Written Request ("QWR") and Notice of Servicing Error ("NOE") for purposes of Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

14. Plaintiffs' NOE was sent, via certified mail, to the address designated by PHL for receipt of QWRs and NOEs.

15. PHL has failed to provide the information required under RESPA § 2605(e) and its implementing regulations. Specifically, PHL has failed to provide any written statement addressing specifically the servicing error outlined in the Joneses' NOE.

16. PHL also failed to provide the information specifically requested in the December 19th letter.

17. PHL's only response to the NOE was a unexplained truncated list of payments allegedly received and a partial pay history. These were provided without any explanation of how the arrearage was calculated or any information addressing the particular concerns raised in the NOE. Nor did PHL provide any explanation, one way or the other, as to whether it determined that an error had occurred. Also, PHL failed to provide information or documents specifically requested by the Joneses.

18. Although PHL also provided letters acknowledging receipt of the NOE, stating that its investigation was ongoing and promising a "thorough response," no such response was received.

19. At the same time, PHL continued to hold the Joneses in default. Since receipt of the NOE, PHL delivered multiple notices of delinquency, including threats of foreclosure, and has continued to report false arrearages to consumer reporting agencies, including Equifax. Although PHL was, at all relevant times, aware that the Joneses disputed the arrearage claim, it failed to

report to the fact of that dispute to the credit bureaus. As a result, the alleged delinquency was reported on the Joneses credit reports as undisputed. Also, beginning in June 2017 PHL started sending statements to the Joneses which included demands for unexplained "fees" of $769.02, plus the regular payment. PHL representatives have failed to provide an explanation for these "fees."

20. The failure by PHL to adequately address the Joneses' NOE and provide even basic information as to its claim that the Joneses have failed to make their mortgage payments has not only kept the Joneses in the dark about the status of the loan, but it has caused them great fear of losing their home.

21. PHL is required pursuant to Section 2605(e) and its implementing regulations to conduct a reasonable investigation and make all appropriate corrections which would be identified or detected through such investigation. Any reasonable investigation would reveal that the Joneses are not delinquent or, at a minimum, do not owe the arrearage or the fees demanded by PHL. Therefore, any reasonable investigation would reveal the need to make corrections to the mortgage loan, including correcting the false claims of delinquency and/or providing refund or credit for payments which have not been properly applied.

22. Plaintiffs have been denied rights granted under RESPA and its implementing regulations. These include, but are not limited to, the right to notify their servicer of a perceived error, the right to have that error reasonably investigated and the right to have all appropriate corrections made. Plaintiffs have also been denied information and documents to which they are entitled by operation of RESPA and its regulations. Plaintiffs have a substantive right to such information.

23. PHL failed to provide a response to the Plaintiffs' NOE as required under RESPA Section 2605(e) and 12 C.F.R. § 1024.35. Specifically, PHL failed to conduct a reasonable

investigation and failed to make the corrections that any reasonable investigation would have revealed were appropriate. Moreover, PHL failed to provide the information required by 12 C.F.R. § 1024.35(e)(B).

## COUNT I
## (VIOLATIONS OF RESPA)

24. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

25. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

26. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

27. RESPA requires specific actions be taken by the servicer upon receipt of an NOE. The servicer must acknowledge receipt of the NOE within 5 business days. 12 U.S.C. § 2605(e)(1). Within thirty (30) days the servicer must take the following action:

-Make "appropriate corrections in the account of the borrower," and provide the borrower a written notification of such correction;

-If, after conducting an investigation, the servicer determines that no error occurred, provide the borrower with a written explanation stating the reasons for which the servicer's determination and contact information of the individual or office that can provide assistance;

-If, after conducting an investigation, the servicer determines that the information requested is not available, provide a written explanation of the reasons for that determination and contact information of the individual or office that can provide assistance;

7

12 U.S.C. § 2605(e)(2)(A)-(C).

28. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated amendments to the RESPA implementing regulations (Reg. X), which clarified the servicer's obligation to respond to an NOE. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014.

29. The 2013 Amendments to Reg. X clarify that the servicer has two options in responding to an NOE. The servicer must either (A) correct the error identified by the borrower, or (B) after "[c]onducting a reasonable investigation" provide "the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.35(e)(A)&(B).

30. In addition to these requirements, the 2010 amendments to RESPA added additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

> -Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);
>
> -Fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C.A. § 2605(k)

31. Plaintiffs' mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

32. Defendant PHL is a "servicer" with respect to Plaintiffs' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

33. Plaintiffs' December 19, 2016 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

34. PHL has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiffs' QWR and NOE as required under that section and Reg. X. Specifically, PHL failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to make appropriate corrections to the account. This is a violation of Section 2605(e) and its implementing regulations.

35. PHL has also violated 12 U.S.C. § 2605(k) by failing to correct the errors identified in the Plaintiffs' NOE and by failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE.

36. Plaintiffs have suffered actual damages as a proximate result of PHL's failure to comply with RESPA, including mental anguish and emotional distress. Plaintiffs' actual damages also include (but are not limited to) fees, interest and other charges incurred as a result of PHL's false belief that Plaintiffs were in default, damage to credit worthiness and reputation, loss of equity as a result of PHL's failure to properly apply payments and costs incurred in sending the December 19, 2016 letter. Because of PHL's failure to correct its servicing error, such costs were incurred for naught.

9

37. PHL's failure to properly recognize and apply payments, its repeated false statements regarding the status of Plaintiffs' loan payments and tacking on of unlawful and unexplained charges caused the Plaintiffs substantial stress and worry, including the fear of losing their home. This stress, worry and fear has caused the Plaintiffs to suffer physical and health problems including, but not limited to, loss of sleep and contributed to Plaintiffs' high blood pressure problems.

38. Through the RESPA and its implementing regulations, Congress has granted certain rights regarding the servicing of mortgages and designated those rights as legally protected interests. Such rights include, but are not limited to, the protection against abusive mortgage servicing practices, the right to request and receive information and documents pertaining to their loan the right to notify a mortgage servicer of a perceived servicing error and the right to have that error reasonably investigated and all appropriate corrections made. The invasion of any of these legally protected interests creates a legally cognizable injury sufficient to provide standing to bring suit in federal court.

39. The protected interests created and/or designated by Congress through RESPA and its implementing regulations have a close relationship to the interests traditionally protected by public policy and the common law. This is reflected in the common law actions of breach of contract, protections against wrongful foreclosure, unjust enrichment, conversion and the right to an accounting, among others.

40. As a result of Defendant's violations of RESPA and its implementing regulations, Plaintiffs have suffered injury in fact and actual harm, and have suffered an invasion of the aforesaid legally protected interests created and/or designated by Congress through RESPA and its implementing regulations.

41. The invasion of Plaintiffs' legally protected interest is concrete, particularized, actual or imminent and not conjectural or hypothetical.

**WHEREFORE**, Plaintiffs request that this Court enter a judgment against PHL for each violation of RESPA, awarding the following relief:

A. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

B. Reasonable attorney's fees, and costs expended in this proceeding; and

C. Such other and further relief as the Court may deem just and proper.

## COUNT III
## (FDCPA VIOLATIONS)

42. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

43. This is a claim against Defendant PHL for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

44. Defendant PHL is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). PHL has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

45. The alleged debt which PHL attempted to collect from Plaintiffs is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

46. Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

A. Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

B.   Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e; and

C.   Reported credit information to consumer reporting agencies which it knew or should have known to be false, including the failure to communicate that a disputed debt was disputed. This is a violation of 15 U.S.C. § 1692e(8);

47.   The actions taken by PHL in violation of the FDCPA occurred within one year of the filing prior to this action.

48.   As a proximate result of PHL's FDCPA violations, Plaintiffs have suffered actual damages.

49.   Plaintiffs have suffered actual damages as a proximate result of PHL's failure to comply with the FDCPA, including mental anguish and emotional distress. Plaintiffs' actual damages also include (but are not limited to) fees, interest and other charges incurred as a result of PHL's attempt to collect sums not owed and false belief that Plaintiffs were in default; damage to credit worthiness and reputation; and loss of equity as a result of PHL's failure to properly apply payments.

50.   PHL's failure to properly recognize and apply payments, its repeated false statements regarding the status of Plaintiffs' loan payments and tacking on of unlawful and unexplained charges caused the Plaintiffs substantial stress and worry, including the fear of losing their home. This stress, worry and fear has caused the Plaintiffs to suffer physical and health problems including, but not limited to, loss of sleep and contributed to Plaintiffs' high blood pressure problems.

51.   Through the FDCPA, Congress has granted certain rights regarding the collection of debts and designated those rights as legally protected interests. Such rights include, but are not limited to, the protection against abusive collection practices as identified in the FDCPA. The

invasion of any of these legally protected interests creates a legally cognizable injury sufficient to provide standing to bring suit in federal court.

52. The protected interests created through the FDCPA have a close relationship to the interests traditionally protected by public policy and the common law, as reflected in the common law actions of breach of contract, protections against negligent and wanton collection actions, fraud, unjust enrichment, conversion and defamation, among others.

53. As a result of Defendant's violations of the FDCPA, Plaintiffs have suffered injury in fact and actual harm, and have suffered an invasion of the aforesaid legally protected interests' designation and/or created by Congress through the FDCPA.

54. The invasion of Plaintiffs' legally protected interest is concrete, particularized, actual or imminent and not conjectural or hypothetical.

55. As a result of its violations of the FDCPA, Defendant is liable to Plaintiffs for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendant PHL for the following:

    A.    Actual damages;

    B.    Statutory damages pursuant to 15 U.S.C. 1692k;

    C.    Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k;

    D.    Such other and further relief as this Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN.**

_____
KENNETH J. RIEMER (RIEMK8712)
Attorney for Plaintiffs
Underwood & Riemer, P.C.
166 Government Street, Suite 100
Mobile, Alabama 36602
Telephone: 251.432.9212
Email: kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Planet Home Lending, LLC
Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, AL 36104